UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JAMES BOYTER,<br><br>    Plaintiff,<br><br> vs.<br><br>PENNINGTON CO SHERIFF DEPT., KEVEN THOM, PENNINGTON COUNTY SHERIFF AT PENNINGTON COUNTY JAIL; JAMES ROWN HORST, JAIL COMMANDER AT PENNINGTON COUNTY JAIL; MIKE PETERSON, SUPERVISOR AND BUILDING AND GROUNDS AT PENNINGTON COUNTY JAIL; AND PENNINGTON COUNTY AUDITOR, (NONE AT TIME, UNKNOWN) COUNTY LAWYER AT PENNINGTON COUNTY;<br><br>    Defendants. | 5:13-CV-05072-JLV<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

This matter is before the court on plaintiff James Boyter's *pro se* complaint pursuant to 42 U.S.C. § 1983. He alleges that defendants have violated his constitutional rights by confining him in a jail cell with a toilet that flushed loudly and for long periods of time. See Docket Nos. 1, 5. This case was referred to this magistrate judge by the Honorable Jeffrey L. Viken, Chief District Judge. See Docket No. 23. Currently pending is defendants' motion for summary judgment and Mr. Boyter's cross-motion for summary judgment. See Docket Nos. 32, 38. The following is this court's recommended disposition of those motions.

## FACTS

Mr. Boyter was indicted on charges of conspiracy to distribute methamphetamine in the District of South Dakota on September 25, 2012.  See United States v. Boyter, CR 12-50132, Docket No. 1 (D.S.D.).  He was arrested on that charge in the Eastern District of Texas on November 16, 2012, and made his initial appearance in South Dakota on December 7, 2012.  See id. at Docket Nos. 5 & 10.  This court ordered Mr. Boyter detained in the custody of the United States Marshals while he was awaiting trial.  Id. at Docket No. 11.  There are no federal incarceration facilities in South Dakota, so the Marshals held Mr. Boyter at the Pennington County Jail pursuant to a contract with that facility.

Mr. Boyter pleaded guilty on May 8, 2013.  Id. at Docket No. 24.  He was sentenced on September 27, 2013, to 120 months' imprisonment.  Id. at Docket No. 31.  From the time of his initial appearance in South Dakota until his sentencing, Mr. Boyter was detained at the Pennington County Jail.[1]  See Defendants' Statement of Undisputed Material Facts, Docket No. 35, ¶¶ 1-3.

Mr. Boyter alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment rights.  See Docket No. 5 at p. 4.  He claims that the toilet in his jail cell at the Pennington County Jail ran excessively, "at times upward of 2 & 3 hours, making excruciating noise levels which amplify in [his jail] cell."  Id.  Mr. Boyter does not explain how long the toilet problem went on, but he does state that "as soon as I sent [a] letter of intent they came and actually fixed [the] problem."  Id.  Mr. Boyter

---

[1] Currently, Mr. Boyter is incarcerated at the Forrest City Medium Federal Correctional Institution in Forrest City, Arkansas.

2

alleges that he sustained mental and physical stress, pain to his ears, and "likely damage to [his] ear causing hearing loss." Id.

Defendants assert in their statement of undisputed material facts that, at all times while Mr. Boyter was at the Pennington County Jail, he resided in cell 4 of cellblock 4. See Docket No. 35 at ¶ 6. Mr. Boyter first reported a problem with the toilet in his cell on September 15, 2013. Id. at ¶ 7. On September 16, defendants sent jail maintenance personnel to Mr. Boyter's cell to address the problem with the toilet. Id. at ¶ 8. Mr. Boyter emailed jail staff on September 16, notifying them of a problem with his toilet. Id. at ¶ 9. Jail staff responded to the email the same day informing Mr. Boyter that county Buildings and Grouds staff were working on the problem. Id. at ¶ 10.

On September 21, 2013, jail maintenance records indicate that the problem with Mr. Boyter's toilet had not yet been remedied. Id. at ¶ 11. On September 23, 2013, the problem with Mr. Boyter's toilet was corrected. Id. at ¶ 12. No other inmates complained about the noise of their toilets in cellblocks 3, 4, or 5. Id. at ¶ 13. Defendants now move for summary judgment on all claims as to each defendant.

## DISCUSSION

**A.    Summary Judgment Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party.  See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam).  Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment.  Anderson, 477 U.S. at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. (citing 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRACTICE & PROCEDURE § 2725, at 93–95 (3d ed. 1983)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

**B.    Analysis of Mr. Boyter's Claim**

    **1.    The Pennington County Sheriff's Department and the Auditor**

Mr. Boyter has sued the Pennington County Sheriff's Department. He has also sued the Pennington County Auditor in her official capacity. In order to establish liability for a local governmental unit like the Sheriff's Department, Mr. Boyter must show that the constitutional injury was inflicted pursuant to a policy or custom of the local governmental entity. Monell v. New York Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). Mr. Boyter never alleges anything in his complaint or his own motion for summary judgment from which the court could infer or deduce that the failure to fix his toilet was part of an official custom or policy. Nor did Mr. Boyter ever supply any evidence of a policy or custom in the Sheriff's Department. Accordingly, the court recommends that summary judgment be granted in favor of the Sheriff's Department.

Mr. Boyter sued the Auditor in her official capacity. See Docket No. 5 at p. 2, ¶ 6. Defendants argue that suing the Auditor in her official capacity is the same as suing the county itself. See Docket No. 33 at p. 4.

The Auditor is an employee of Pennington County, a subdivision of the state of South Dakota. As such, a suit against her in her official capacity is tantamount to a suit against the county itself. Parish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010). Respondeat superior claims are not recognized under 42 U.S.C. § 1983, so the county can only be held liable upon a showing of policy or custom on the part of the county. Monell, 436 U.S. at 694. Accordingly, summary judgment should be granted to the Auditor on Mr. Boyter's official capacity claim for the same reason that summary judgment in favor of the Sheriff's Department is recommended: Mr. Boyter has made no allegation and supplied no evidence of an official policy or custom on the part of the county.

### 2. Mr. Boyter's Claim Against the Other Defendants

In order to show a *prima facie* case under 42 U.S.C. § 1983, Mr. Boyter must show (1) defendants acted under color or state law and (2) " 'the alleged wrongful conduct deprived him of a constitutionally protected federal right.' " Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010) (quoting Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009)).

Qualified immunity protects government officials from liability and from having to defend themselves in a civil suit if the conduct of the officials "does not violate clearly established statutory or constitutional rights." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not just a defense to liability at trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Therefore, the Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 536 (1991).

6

To determine whether an official may partake of qualified immunity, two factors must be determined: (1) whether the facts that plaintiff has shown make out a violation of a constitutional right and (2) whether that constitutional right was "clearly established" at the time of the official's acts. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds that one of the two elements is not met, the court need not decide the other element, and the court may address the elements in any order it wishes "in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). "If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity." Nance v. Sammis, 586 F.3d 604, 609 (8th Cir. 2009).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Stanton v. Sims, ___ U.S. ___, 134 S. Ct. 3, 5 (2013) (quoting Ashcroft v. al-Kidd, ___ U.S. ___, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))). " 'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " Stanton, 134 S. Ct. at 5. " 'Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " Ambrose v. Young, 474 F.3d 1070, 1077 (8th Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. Claims by pretrial detainees, as Mr. Boyter was at the time he

alleges his claim arose, are analyzed under the Due Process Clause of the Fourteenth Amendment. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005). However, the same deliberate-indifference standard that has evolved under Eighth Amendment conditions-of-confinement claims apply equally to pretrial detainees under the Fourteenth Amendment. Id. In order to demonstrate a deliberate indifference claim, Mr. Boyter must show (1) that his incarceration in cell 4 of cellblock 4 objectively posed a substantial risk of serious harm and (2) the jail officials subjectively knew of but disregarded, or were deliberately indifferent to, Mr. Boyter's health or safety. Id. at 602.

Under the first prong of the above test, Mr. Boyter must show "an objectively serious medical need or a deprivation of that need . . . [that is] either obvious to the layperson or supported by medical evidence, like a physician's diagnosis." Grayson v. Ross, 454 F.3d 802, 809 (8th Cir. 2006).

Other courts have found that excessive noise may support an Eighth Amendment claim under § 1983. See Lucien v. Gramley, 99 F.3d 1142, *1 (7th Cir. 1996) (unpublished) (citing Kost v. Kozakiewicz, 1 F.3d 176, 180 (3d Cir. 1993) (unbearable noise pollution causing degenerative hearing loss); Inmates of Occoquan v. Barry, 844 F.2d 828, 848 (D.C. Cir. 1988) (excessive noise from unregulated television volume); Williams v. Boles, 841 F.2d 181, 183 (7th Cir. 1988) (incessant noise); Toussaint v. McCarthy, 801 F.2d 1080, 1110 (9th Cir. 1986) overruled in part on other grounds, Sandin v. Conner, 515 U.S. 472 (1995) (constant level of noise adversely affecting inmates' hearing)).

In the Lucien case, the plaintiff supported his claim with affidavits attesting to a noise level that was "dangerously high, deafening and maddening at all times

of the day, night and early morning hours"; typical average daytime noise of 85 to 95 decibels; noise at the same volume as a typical rock concert or discotheque; and evidence that corrections officers made no efforts to intervene to reduce the noise level. Id. at * 1-2. Defendants told a diametrically opposed tale: they submitted affidavits stating that the noise level at the prison was not excessive, that guards enforce compliance with earplug and noise rules, that inmates who do not comply with noise rules have their audio-visual equipment confiscated, and that no other inmates had complained about noise levels. Id. at *2. The Seventh Circuit said that, in order to maintain a claim, Lucien must show that "the risk of injury due to the noise conditions must be 'so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.' " Id. (quoting Helling v. McKinney, 509 U.S. 25, 36 (1993)). The Seventh Circuit held defendants were entitled to summary judgment on Lucien's claim, noting Lucien's estimate of the decibel level would not be admissible at trial, that his claim was "speculative and unsupported," and that he did not submit any medical evidence documenting damage to his health because of the noise. Id. at *3.

In the Helling case, an inmate brought an Eighth Amendment claim based on the prison's failure to protect him from second-hand cigarette smoke, including a five-pack-a-day cellmate of Helling's. Helling, 509 U.S. at 27-29. In order to prove his claim, the Court stated the inmate must show that defendants exposed him, with deliberate indifference, to conditions that "pose an unreasonable risk of serious damage to his . . . health." Id. at 35. This required the inmate to show he was being exposed to "unreasonably high levels" of second-hand smoke. Id.

9

In <u>Givens v. Jones</u>, 900 F.2d 1229, 1231 (8th Cir. 1990), an inmate sued alleging an Eighth Amendment claim based on loud noise and fumes generated during renovation work being done at the prison where the inmate was housed. Givens alleged the conditions caused him to suffer migraine headaches. <u>Id.</u> Defendants admitted renovation work was taking place, but asserted no other inmates had filed grievances about the noise and fumes and there was no feasible possibility of relocating inmates during the renovation work. <u>Id.</u>  The issue before the court was whether defendants were entitled to qualified immunity on Givens' claims. <u>Id.</u> at 1231-32.

The Eighth Circuit stated "conduct which does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." <u>Id.</u> at 1232 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).  The court concluded that defendants were entitled to qualified immunity. <u>Id.</u> at 1234.  Key to the court's decision were that remodeling is a fact of life which most people have to face at one time or another, the fact that the renovation work took place only during eight hours of the day and did not happen at night when the inmates were sleeping, and that no other inmates filed grievances about the fumes or noise. <u>Id.</u>  Under these facts, the court held that defendants could reasonably have believed they were not violating Givens' constitutional rights. <u>Id.</u>

Mr. Boyter responded to defendants' motion for summary judgment with a pleading he styles as his own motion for summary judgment. <u>See</u> Docket No. 38.

10

Mr. Boyter does not support his case with any affidavits, medical records, or other documents as required by FED. R. CIV. P. 56(c). Id. Instead, Mr. Boyter makes unsupported allegations in his brief. Id. Those allegations focus exclusively on whether defendants ever fixed his toilet and include argument that defendants have not provided complete discovery to Mr. Boyter concerning repairs to the toilet. Id. Mr. Boyter asserts in his motion for summary judgment that defendants never fixed his toilet, but the court notes that this is contrary to the assertion he made in his amended complaint when he stated that defendants eventually "actually fixed [the] problem." Compare Docket No. 5, at p. 4; with Docket No. 38. Both statements were allegedly made under oath. Id. In any event, Mr. Boyter does not dispute the other properly supported facts asserted by defendants. See Docket No. 38.

Therefore, the court takes as undisputed the facts that Mr. Boyter first became incarcerated at the Pennington County Jail on December 7, 2012; that he first reported a problem with his toilet on September 15, 2013; that Mr. Boyter was sentenced on his federal crime on September 27, 2013, and would have been transported out of the Pennington County Jail soon after that date; that defendants responded in an effort to fix Mr. Boyter's toilet on September 16, 21, and 23, 2013; and that no other inmates complained about the noise of toilets in cell blocks 3, 4, or 5. See Docket No. 35.

Whether Mr. Boyter's toilet was fixed satisfactorily, as defendants have asserted and supported, or not, as Mr. Boyter denies in one pleading and admits in his other pleading, is immaterial. Mr. Boyter would have been in the cell with the toilet for a total of only approximately 12 days from the date he first made a

11

complaint about the noise of the toilet (September 15-27). Further, Mr. Boyter was not in solitary confinement, so he would have been free to leave the confines of his cell for long stretches of time. And even Mr. Boyter admits that the noise from the toilet was not constant, but rather that it went on for 2-3 hours after the toilet was flushed. See Docket No. 5 at p.4. Finally, Mr. Boyter has submitted no medical evidence that he suffered any hearing loss or other ill affect to his physical or mental health as a result of the exposure to the toilet. Mr. Boyter does not deny that defendants attempted to fix his toilet, even if he does allege that they were unsuccessful in those attempts.

      This case presents a drastically different picture than the scenarios where other courts have found claims of excessive noise to be actionable. There was no proof submitted that Mr. Boyter suffered degenerative hearing loss as in Kost, 1 F.3d at 180, and Toussaint, 801 F.2d at 1110. There was no allegation that the noise was unceasing as in Inmates of Occoquan, 844 F.2d at 848, and Williams, 841 F.2d at 183. Instead, this case is very like the facts in Givens. The court takes Mr. Boyter's allegation as true that the toilet was noisy and never was fixed. Nevertheless, even Mr. Boyter's own complaint admits that the noise from the toilet was not constant. See Docket No. 5 at p. 4. And, as observed above, Mr. Boyter could escape the noise by leaving his cell during regular hours. Further, he was only exposed to the noise for approximately 12 days from the first date he complained until he left the jail.

      In addition, there is simply no medical or other objective evidence that there were serious adverse effects, or threats, to Mr. Boyter's health posed by the toilet. The question of whether the toilet posed a serious risk of substantial harm to Mr.

Boyter's health, or a risk of injury so grave that it violates contemporary standards of decency, is not obvious to a layperson.  Helling, 509 U.S. at 36; Grayson, 454 F.3d at 809.  Therefore, medical evidence is required and Mr. Boyter has produced none.  Finally, because the defendants responded immediately when Mr. Boyter complained about his toilet, whether they were successful in fixing the toilet or not, Mr. Boyter cannot demonstrate that they were deliberately indifferent to his serious medical needs or that they demonstrated obduracy and wantonness.  Whitley, 475 U.S. at 319; Givens, 900 F.2d at 1234.  As in Givens, then, this court concludes that Mr. Boyter has not made out a claim for the violation of his Eighth Amendment rights, and has not shown that defendants were "plainly incompetent" or knowingly violated those rights.  Givens, 900 F.2d at 1234.  The court recommends granting defendants' motion for summary judgment and denying Mr. Boyter's own motion.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this court respectfully recommends that the defendants' motion for summary judgment [Docket No. 32] be granted in its entirety on Mr. Boyter's claims against all defendants.  The court also respectfully recommends that Mr. Boyter's motion for summary judgment [Docket No. 38] be denied in its entirety.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED March 26, 2015.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge